539 P.2d 598

**FARM BUREAU MUTUAL INSURANCE COMPANY OF IDAHO, Plaintiff-Respondent,**

v.

**Michelle HMELEVSKY, by and through her guardian ad litem, Mildred Ridgeway, and Mildred Ridgeway, Defendants-Appellants,**

v.

**James H. COUCH, Jr., et al., Defendants,**

v.

**FARMERS INSURANCE COMPANY OF IDAHO, an Idaho Corporation, Defendant-Respondent.**

No. 11483.

Supreme Court of Idaho.

Aug. 8, 1975.

J. D. Sudweeks, James J. May, May, May, Sudweeks & Fuller, Twin Falls, for defendants-appellants.

John A. Doerr, Doerr & Reed, Twin Falls, for Farm Bureau Mut. Ins. Co. of Idaho.

Bert Larson, Parry, Robertson, Daly & Larson, Twin Falls, for Farmers Ins. Co. of Idaho.

Lloyd J. Walker, Walker & Kennedy, Twin Falls for Couch and Jensens.

SHEPARD, Justice.

This is an appeal from a judgment entered following trial in an action for declaratory judgment. Plaintiff-respondent Farm Bureau brought the action seeking a declaratory judgment as to its liability under a policy of automobile insurance, and Farmers Insurance Company intervened in the action seeking similar relief. The trial court entered judgment in favor of both insurance carriers, holding neither was liable under their policies. We reverse.

On June 27, 1971 an automobile owned by Leon and Fay Wright was involved in a single vehicle accident. The driver of the vehicle at the time of the accident was one James Couch. Leona Wright, a minor child, is the daughter of Leon and Fay Wright and the family reside outside Twin Falls, Idaho. Prior to the date of the accident, the minor child, Leona, had permission to drive both the car in question and a pickup truck, also owned by the Wrights. Depositions which were taken in another case which will be discussed *infra* were used at the trial in the instant case along with the testimony of witnesses. In the

course thereof, the Wrights heatedly assert that they gave permission to their daughter only to use the automobile for specific purposes to travel to and from specific places. They also assert that she was specifically forbidden to allow any other person to drive the vehicle.

We recite the following facts in detail only because they are necessary to the context of our decision. On the day of the accident Leona was absent from the Wright home when Leon and Fay Wright decided to leave. They left a note for Leona, giving her permission to drive the car to the home of an aunt about one and one-half mile distant from the Wright home and the keys were left in the car. Leona arrived home but instead of going to the aunt's home she first went to church and thereafter purchased some beer and picked up three friends, James Couch, appellant Michelle Hmelevsky, and John Jensen. Thereafter certain drugs were purchased and then the group drove in the Wright car to the area of Stanley, Idaho. After spending some time there they started the trip home. At some point, which is not specified, Leona Wright allowed James Couch to drive the vehicle. While Couch was driving on the return trip home the accident took place and all four occupants of the vehicle were injured.

In separate actions filed in October and November 1972 Hmelevsky and Jensen brought action against the Wrights and Couch for the injuries suffered in that accident. Thereafter Farm Bureau, who is the insurer of Leon and Fay Wright, brought the instant action for declaratory judgment as to its liability, and Farmers Insurance Company, who is the alleged insurer of Couch, was allowed to intervene and to obtain a determination as to its liability. Leon and Fay Wright are not parties to the instant action.

The Farm Bureau policy insuring the Wrights' automobiles provides for coverage if a driver other than the Wrights was operating the vehicle "with the permission of either [of the Wrights] and within the scope of such permission." The Farmers Insurance policy provides coverage for Couch if he was driving the Wright car "with the permission of the owner," [in this case the Wrights].

Following trial, the district court found that the Wrights had not given permission for Couch to drive their vehicle nor did they consent to Leona permitting Couch to drive. Thus it found that neither of the policies were applicable nor provided coverage. It declared that neither company was obligated to provide coverage for or to defend Couch in either of the personal injury cases. It also declared that the Farmers' policy was excess over any coverage provided by Farm Bureau as to liability arising out of the accident. Hmelevsky takes this appeal from the judgment and we reverse.

■ At the outset we note that an insurance company may adjudicate its liability under a policy prior to a trial of a personal injury action and therefore declaratory judgment was properly sought here. *Temperance Insurance Exchange v. Carver*, 83 Idaho 487, 365 P.2d 824 (1961); I.R.C.P. 57; I.C. § 10–1201; *Occidental Fire and Casualty Company v. Cook*, 92 Idaho 7, 435 P.2d 364 (1967). *See also State Farm Mutual Automobile Ins. Co. v. Jacober*, 10 Cal.3d 193, 110 Cal.Rptr. 1, 514 P.2d 953 (1973).

The trial court found that since Leona Wright had made use of the vehicle on numerous previous occasions with her parents' consent, she had general permission to use the car. The trial court also found, however, that Leona did not have her parents' permission for the precise use she made of the car on the day in question. It is clear that Leona had specific permission to use the car for a limited purpose on the day of the accident. The trial court also found that on three occasions prior to the day in question Leona Wright had allowed other persons to drive family vehicles, but that neither Leon nor Fay Wright were aware of other persons being permitted to drive the vehicles. The court further

found that neither Leon nor Fay Wright knew or were acquainted with Couch or John Jensen and had given neither of them permission to drive the vehicle involved in the accident. Although we might view the evidence differently, the trial court found that neither Leon nor Fay Wright were aware of Leona's using the family vehicle to travel to a destination other than to which she was given specific permission to go. The scene of the accident was approximately 150 miles from the Wright residence.

The trial court concluded as matters of law that Leona did not have permission either express or implied to use the family vehicle to travel to the area where the accident occurred, nor did she have either express or implied permission to allow Couch to drive the vehicle, nor did Couch have the implied permission of the Wrights to drive the vehicle.

I.C. § 49–1521(b) is part of the motor vehicle safety responsibility act and provides that a vehicle owner's policy "shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured." Policies such as that issued by both Farm Bureau and Farmers are subject to the requirement. I.C. § 49–1521. Motor vehicle insurance policies must be construed in conformance with the mandate of that act. *Farmers Insurance Exchange v. Wendler,* 84 Idaho 114, 368 P.2d 933 (1962). The stated policy and purpose of that safety responsibility act "is to protect the public against irresponsible drivers." Farmers Exchange, *supra,* 84 Idaho at 119, 368 P.2d at 935.

The principal point of decision herein is the effect of granting Leona Wright general permission to use the vehicle and specific permission to use the vehicle for a limited purpose on the day of the accident in view of Leona's deviation from the specific use permission and her deviation in permitting Couch to drive the vehicle. In similar cases nationally, a multitude of decisions have produced widely divergent results.

Three differing rules have been adopted as set forth in *Ryan v. Western Pacific Insurance Company,* 242 Or. 84, 408 P.2d 84 (1965).

"These have been catalogued as falling into one of three rules: (1) The 'strict' or 'conversion' rule, i. e., any deviation from the scope of the permission given ends coverage; (2) The 'minor deviation' rule, i. e., a minor deviation from the scope of the initial permission does not end coverage, but a major deviation does; and (3) The 'liberal' or 'initial permission' rule, i. e., the permittee is covered although the use is beyond the scope of the initial permission unless the use so far exceeds the initial permission that the permittee is akin to a thief or converter." 408 P.2d at 86.

*See also* 7 Am.Jur.2d Automobile Insurance, § 119 et seq. *See also American Fidelity Co. v. North British & Mer. Inc. Co.,* 124 Vt. 271, 204 A.2d 110 (1969), which along with *Ryan* appears to have adopted still another approach which could perhaps be labeled "the major deviation" rule.

This court has not as yet had the occasion to adopt any of the above rules and although the respective parties urge us to adopt one of the above differing rules, we believe none can be adopted for universal application in this state. It is our opinion that all of the above rules tend to ignore those differences which are inherent in a family situation as contrasted with other circumstances. Many cases interpreting deviation from an express permission do so in a context involving employer-employee relationships or other differing from family circumstances. We believe they are thus distinguishable in that what might be appropriate in a business context is not practical or proper in a parent-child context.

The intra-family relationship is unique in the law, albeit this court and others

have made inroads as to the law governing that relationship. *See Rogers v. Yellowstone,* 96 Idaho 14, 539 P.2d 566 (1975); and particularly *Hebel v. Hebel,* 435 P.2d 8 (Alaska 1967), allowing tort action to be brought against a parent by a child. Human experience teaches that when parents allow a child to drive a family car with general permission on an at least occasional basis it is to be expected and it is perhaps inevitable that occasionally the child will deviate from the express permission governing the usage of the car. The child will probably drive the car without express permission, may exceed the specific use permission granted by exceeding or deviating from the specific use and may violate other specific restraints governing the usage of the car. Such appears to be the case herein. Leona on at least three occasions violated the express restraint against allowing others to drive the car. There was testimony by the parents suggesting their probable knowledge that Leona deviated from the express destination rule, albeit with the pickup rather than the vehicle involved in this accident. We deem it proper to impose upon insurance carriers like knowledge of human behavior and frailties and suggest undoubtedly such underwriting risks are contemplated in the rates imposed upon vehicle owners with minor children. We note herein, although not ruled upon specifically by the trial court, that there was testimony indicating the awareness of the insurance carrier's agent of Leona's operation of the family vehicles.

As herein noted the motor vehicle safety responsibility act is basically to protect the public against irresponsible drivers. Our result here is the only one possible consistent with the policy of I.C. § 49–1521. We see no salutory purpose to be served in denying an effective remedy to an injured person solely because at the precise instant of an accident a parent may disapprove of what a child is doing in the operation of a motor vehicle. The result adopted herein also has the advantage of certainty. It should serve to reduce the amount of litigation, expense and delay which may be preliminary to an injured person's ability to even seek compensation. As pointed out in *Columbia Casualty Co. v. Hoohuli,* 50 Haw. 212, 437 P.2d 99 (1968) "the question of insurance coverage is often preliminary to an adjudication of a permittee's liability in the suit for damages. It is undesirable to require an injured person to await the determination of that question in a declaratory judgment action."

We therefore conclude that insofar as a family context situation is concerned, the word "permission" as used in the statutes and automobile insurance policies means general permission to at least occasionally use a family vehicle. Precise permission to do what the driver is doing at the precise moment of the accident is unnecessary. The Wrights allowed Leona to occasionally drive the car and on the day of the accident she had specific permission to drive it for a limited purpose. Therefore she was using the car with the permission of her parents.

■ It is undisputed that Leona gave Couch specific permission to drive. On the other hand it is clear and reflected in the finding of the trial court that the Wrights did not know Couch, did not give him permission to drive, and further had instructed Leona not to allow anyone else to drive any of the family vehicles. Thus we are required to decide whether a subpermittee is driving with permission of the owner. *See* 4 A.L.R.3d 10.

In *Butterfield v. Western Casualty & Surety Co.,* 83 Idaho 79, 357 P.2d 944 (1960) this court stated the general rule to be:

"*  *  * when a general permission is granted by the named insured to use a vehicle, and without any limitation by the named insured against a third person driving, the use of the vehicle by the first permittee is with the permission of

the named insured, even though another is driving, provided the use is to serve a purpose, benefit, or advantage of the first permittee."

See also *Industrial Indemnity Co. v. United States F. & G. Co.*, 93 Idaho 59, 454 P. 2d 956 (1969).

Couch was driving Leona back home from Stanley and depending upon one's view of the testimony such could have been necessary or was at least arguable in view of her alleged illness, intoxication or other disablement and could therefore be considered to be serving a purpose of Leona and arguably a purpose of her parents. Nevertheless the parents did place a limitation against any third person driving the vehicle. In other cases under similar circumstances courts have found that permission by the owner exists notwithstanding that the owner told the child not to let anyone else drive the car. *Odolecki v. Hartford Accident & Indemnity Co.*, 55 N.J. 542, 264 A.2d 38 (1970); *Cascade Insurance Co. v. Glacier General Insurance Co.*, 156 Mont. 236, 479 P.2d 259 (1971). *See also Mullin v. Fidelity & Casualty Co.*, 271 Minn. 551, 136 N.W.2d 613 (1965), using the rationale that the permittee is actually using the car in that he is present and able to exert control. As was stated in *Odolecki*:

> "We fail * * * to see the distinction between a case where a first permittee exceeds the scope of permission in terms of time, place, or purpose, and a case where he exceeds the scope of permission in terms of use of the vehicle by another." 264 A.2d at 42.

We agree with *Odolecki* and hold that the *Butterfield* rule must be modified to include within its scope those circumstances wherein a son or daughter allows another person to drive the vehicle with express permission although such express permission is contrary to the instruction of the parents. Couch was therefore driving with the permission of the insured and coverage is afforded by the insurance policies in question here.

No appeal is taken nor is there any issue here as to the question of priority between the two insurance policies and hence that issue is not treated here. Judgment of the district court is reversed and remanded for further proceedings consistent herewith. Costs to appellants.

McQUADE, C. J., and McFADDEN, J., concur.

DONALDSON, Justice (dissenting):

I dissent. This Court has not yet passed on which of the three rules to follow regarding the extent of coverage under an omnibus clause in an insurance policy. Recent decisions from other states appear to favor the "liberal" or "initial permission" rule which extends coverage if the permittee has initial permission to use the automobile even though the actual use is beyond such initial permission. I would be willing to adopt this rule in Idaho but the majority extends this rule much further by granting coverage to a sub-permittee even where there is an express limitation by the insured not to allow anyone but the original permittee to drive the automobile. If this reasoning is followed to its logical conclusion, the next step will be to extend coverage to all minor drivers of a household even though the parents have expressly prohibited them from driving the insured automobile. The result will be that insurance companies will require that all children who have a drivers license be listed as drivers of the insured automobile and parents will be forced to pay the higher rates for that coverage. I would follow the holding of this Court in *Butterfield v. Western Casualty & Surety Co.*, 83 Idaho 79, 357 P.2d 944 (1960), and deny coverage.

BAKES, Justice (dissenting):

I concur with Justice Donaldson and would follow the decision of this Court in *Butterfield v. Western Casualty & Surety Co.*, 83 Idaho 79, 357 P.2d 944 (1960).

**52**

However, I further question the propriety of determining the key issue in the injured claimant's case, i. e., whether or not the vehicle was being used with the permission of the insured, in a case other than the negligence action filed by the claimant. This Court, in *Ennis v. Casey*, 72 Idaho 181, 185, 238 P.2d 435 (1951), warned against the practice of permitting issues, which should be decided in the main action, from being determined in a declaratory judgment proceeding which preempts the main action. And while this Court stated in *Temperance Insurance Exchange v. Carver*, 83 Idaho 487, 365 P.2d 824 (1961):

> "Where an insurer acts with reasonable promptness, so that the insured and third parties are not prejudiced, the insurer is entitled to have the question of the validity of its policy, and its liability thereunder, determined prior to the trial of an action against the insured upon a liability alleged to be covered by the policy, so that the insurer may know whether it is obligated to defend the insured as provided by the policy. (Citations omitted)." 83 Idaho at 492, 365 P.2d 826,

actions such as that before the Court today point out the impropriety of this procedure and how prejudice can possibly result. One effect is that the plaintiffs are forced to have the issue of permission determined not in their action in which the extent of their injuries is before the trier of fact, but in an action in which they are at best only one of several parties defendant. In this case you have the further complication in that the insureds, Leon and Fay Wright, were not even made parties to the action, raising the specter of inconsistent judgments in the two cases. I think the district courts should heed carefully the admonition of the Ennis case, *supra,* suggesting that critical issues such as the question of permission should ordinarily be decided in the main action, and not in the declaratory judgment action filed by the insured's company.