**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| NAUTILUS INSURANCE COMPANY, *Plaintiff-Appellant/ Cross-Appellee*, v. ACCESS MEDICAL, LLC; ROBERT CLARK WOOD II; FLOURNOY MANAGEMENT, LLC, *Defendants-Appellees/ Cross-Appellants.* | Nos. 17-16265 17-16272 17-16273 D.C. No. 2:15-cv-00321-JAD-GWF ORDER CERTIFYING QUESTION TO THE NEVADA SUPREME COURT |

Filed July 2, 2019

Before:  Ronald M. Gould, Sandra S. Ikuta,
and Ryan D. Nelson, Circuit Judges.

## SUMMARY[*]

---

### Certified Question to Nevada Supreme Court

The panel certified the following question of state law to the Nevada Supreme Court:

> Is an insurer entitled to reimbursement of costs already expended in defense of its insureds where a determination has been made that the insurer owed no duty to defend and the insurer expressly reserved its right to seek reimbursement in writing after defense has been tendered but where the insurance policy contains no reservation of rights?

---

### ORDER

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure, we respectfully certify to the Nevada Supreme Court the question of law set forth in Section III of this order. This question of law will be determinative of a question pending before this court and there is no controlling precedent in the decisions of the Nevada state courts.

### I.

We summarize the material facts. After a business partnership went sour, Ted Switzer filed a cross-complaint against Access Medical, Flournoy, and Robert Clark Wood

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

II (collectively "Insureds") in California state court. In the cross-complaint, Switzer brought thirty-one claims, including a purported claim for interference with prospective economic advantage because of the Insureds' alleged interference with relationships with hospitals with which Switzer "enjoyed a long-standing and mutually beneficial relationship." Specifically, Switzer alleged that: (1) Insureds "acted to disrupt the relationship between Switzer" and various hospitals; (2) the wrongful acts "resulted in injury to the personal and business reputation" of Switzer; (3) the wrongful acts caused various vendors to stop using Switzer's business and to use Access Medical's instead; and (4) the wrongful acts were malicious and done with the intent to injure Switzer's professional and business well-being. Although never referenced in the cross-complaint, at some point an email written by Jacqueline Weide, a representative of Access Medical and Flournoy, was uncovered. In the email, Weide advised a third-party hospital that Access Medical wanted to contract to sell spinal implants to them because the hospital's "Distributor in the California area is now banned from selling Alphatec implants." Switzer was the alleged Distributor.

Insureds tendered defense of the cross-claim to their insurance provider, Nautilus. Under the insurance policy, Nautilus is required to defend Insureds against "any suit seeking damages" because of a "personal and advertising injury," "arising out of . . . [o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." After multiple refusals, Nautilus agreed to defend Insureds under an express reservation of rights.

In a May 19, 2014 letter, Nautilus reserved its right to disclaim coverage, withdraw from defense, and obtain a reimbursement of defense fees following a determination that no potential for coverage existed for Access Medical and Wood's claims.  Insureds did not object to payment of defense counsel invoices.  On October 2, 2014, Nautilus issued a supplemental reservation of rights letter again reserving the right to reimbursement of all attorneys' fees, expert fees, defense costs, indemnification payments, and other litigation-related expenses paid in connection with its defense of Access Medical and Wood.  That same month, Nautilus agreed to provide Flournoy with a defense against the Switzer cross-complaint, subject to a full and complete reservation of rights.  Nautilus continued to pay for Insureds' counsel.  Finally, in an April 5, 2016 letter, Nautilus again reserved the right to demand defense reimbursement costs. Nautilus continued to pay defense costs after the letter was sent.

On February 24, 2015, Nautilus sought a declaratory judgment in Nevada federal district court that Nautilus never had a duty to defend or indemnify Insureds.  Nautilus then filed a motion for partial summary judgment.  Nautilus did not address that it was seeking reimbursement of defense costs in either pleading.  The Nevada district court found that Nautilus's duty to defend under the policy was not triggered under Nevada law because Switzer's cross-complaint did not allege and the Weide email did not contain a false statement that would support a claim for defamation, libel, or slander under California law.  Therefore, the district court construed Nautilus's motion as one for full summary judgment, entered judgment in favor of Nautilus, and closed the case.

Nautilus subsequently brought a motion for further relief under 28 U.S.C. § 2202 seeking reimbursement of defense

costs incurred defending Insureds in the Switzer cross-complaint. Insureds filed a motion for reconsideration arguing that Nautilus had a duty to defend Insureds. The district court denied both motions in the same order. On the reimbursement issue, the district court concluded Nautilus was not entitled to further relief because: (1) Nautilus did not include a claim for reimbursement or damages in its complaint; (2) Nautilus did not show it was entitled to relief as a matter of law under § 2202; and (3) Nautilus did not establish it was entitled to reimbursement under Nevada law.

In a separate memorandum disposition, we affirmed the district court's determination that Nautilus did not owe a duty to defend Insureds and reserved judgment on whether Nautilus could seek further relief under § 2202, depending on whether Nautilus is entitled to reimbursement under Nevada law. Therefore, the only issue remaining is whether Nautilus is entitled to reimbursement under Nevada law.

## II.

The district court determined Nautilus is not entitled to reimbursement under Nevada law. Nevada state courts do not appear to have spoken directly on this issue. Insureds argue under *Probuilders Specialty Insurance Co. v. Double M. Construction*, 116 F. Supp. 3d 1173, 1182 & n.4 (D. Nev. 2015), Nevada law only allows reimbursement where the policy explicitly provides insurer's defense is "subject to such reservation of rights" as the insurer deems appropriate. Nautilus argues that *Probuilders* is not so limited.

Our understanding of Nevada law is that a reservation of rights letter can generally be valid. *See Havas v. Atl. Ins. Co.*, 614 P.2d 1, 1 (Nev. 1980) (per curiam) (insurer "agreed to investigate validity of the claim while specifically reserving all defenses available to it"). The federal district

court in Nevada determined that insurers have a right to reimbursement if there is an "understanding" between the parties that the insured would be required to reimburse costs if it is later determined that the insurer had no duty to defend. *Capitol Indem. Corp. v. Blazer*, 51 F. Supp. 2d 1080, 1090 (D. Nev. 1999). This understanding can exist outside the terms of the policy. For example, acceptance of money from the insurer can constitute an implied agreement to the reservation of rights. *Probuilders Specialty Ins. Co.*, 116 F. Supp. 3d at 1182.

Here, Nautilus advised Insureds on at least four occasions that it was reserving all rights, including the right to seek reimbursement. In each of the letters sent to Insureds, Nautilus stated that it "further reserves the right to seek reimbursement for any and all attorney fees, expert fees, defense costs, indemnification payments, and any other litigation-related expenses that it pays in connection with its defense and indemnification."

To be sure, several courts have held that a unilateral reservation of rights letter cannot itself create rights not contained in the policy. *See, e.g.*, *Shoshone First Bank v. Pac. Emp'rs Ins. Co.*, 2 P.3d 510, 515–16 (Wyo. 2000) (opting to follow minority rule that insurer cannot recover defense costs because "insurer is not permitted to unilaterally modify and change policy coverage"). The Illinois Supreme Court explained the difference between the majority and minority rules:

> In general then, the decisions finding that an insurer is entitled to reimbursement of defense costs are based upon a finding that there was a contract implied in fact or law, or a finding that the insured was unjustly enriched when its insurer paid defense costs

for claims that were not covered by the insured's policy.

*Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1101 (Ill. 2005). In adopting the minority rule, the Illinois Supreme Court explained that in paying defense costs pursuant to a reservation of rights:

> [T]he insurer is protecting itself at least as much as it is protecting its insured. Thus, we cannot say that an insured is unjustly enriched when its insurer tenders a defense in order to protect its own interests, even if it is later determined that the insurer did not owe a defense.

*Id.* at 1103.

Courts that follow the majority rule, however, state that it is in the best interests of both parties to allow insurers to recoup their defense costs under a reservation of rights. "Without a right of reimbursement, an insurer might be tempted to refuse to defend an action in any part—especially an action with many claims that are not even potentially covered and only a few that are—lest the insurer give, and the insured get, more than they agreed." *Buss v. Superior Court*, 939 P.2d 766, 778 (Cal. 1997).

We understand that "[w]here Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance." *Eichacker v. Paul Reverse Life Ins. Co.*, 354 F.3d 1142, 1145 (9th Cir. 2004) (internal quotation marks omitted). Under California law, "the insurer can reserve its right of reimbursement for defense costs by itself, without the insured's agreement." *Buss*, 939 P.2d at 784 n.27. "If that conclusion is reached,

the insurer, having reserved its right, may recover from its insured the costs it expended to provide a defense, which, under its contract of insurance, it was never obliged to furnish." *Scottsdale Ins. Co. v. MV Transp.*, 115 P.3d 460, 468 (Cal. 2005).

Because the Nevada Supreme Court has not spoken directly on the issue of an insurer's entitlement to reimbursement of defense costs under a reservation of rights and because such issues involve matters of state law and policy best resolved by the highest court of Nevada, certification of a question to the Nevada Supreme Court is appropriate. We recognize that "[t]he written opinion of the Supreme Court stating the law governing the questions certified . . . shall be res judicata as to the parties." Nev. R. App. P. 5(h).

## III.

The question of law we certify is:

> Is an insurer entitled to reimbursement of costs already expended in defense of its insureds where a determination has been made that the insurer owed no duty to defend and the insurer expressly reserved its right to seek reimbursement in writing after defense has been tendered but where the insurance policy contains no reservation of rights?

We do not intend our framing of this question to restrict the Nevada Supreme Court's consideration of any issues it deems relevant. If the Nevada Supreme Court accepts certification, it may in its discretion reformulate the question. *Adamson v. Port of Bellingham*, 899 F.3d 1047, 1052 (9th Cir. 2018).

IV.

Nautilus's appeal presents an issue of Nevada state law which will be determinative of an issue essential to the resolution of claims raised in the present case. For this reason, we respectfully request that the Nevada Supreme Court accept and decide the question herein certified.

The clerk of this court shall forward a copy of this order, under official seal, to the Nevada Supreme Court, along with copies of all briefs and excerpts of record that have been filed with this court.

Further proceedings in our court are stayed pending the Nevada Supreme Court's decision whether it will accept review and, if so, receipt of the answer to the certified question. This case is withdrawn from submission until further order from this court. The clerk is directed to administratively close this docket, pending further order. The panel will resume control and jurisdiction on the certified question upon receiving an answer to the certified question or upon the Nevada Supreme Court's decision to decline to answer the certified question.

The parties shall notify the clerk of this court within 14 days of any decision by the Nevada Supreme Court to accept or decline certification. If the Nevada Supreme Court accepts certification, the parties shall file a joint status report every six months after the date of acceptance, or more frequently if the circumstances warrant.

IT IS SO **ORDERED**.

Ronald M. Gould
Circuit Judge

## Supplemental Material

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure, we include here the designation of the parties who would be the appellants and appellees in the Nevada Supreme Court, as well as the names and addresses of counsel.

For Appellant/Cross-Appellee Nautilus Insurance Company:

Linda Wendell Hsu
Selman Breitman LLP
33 New Montgomery Street
San Francisco, California 94105

For Appellees/Cross-Appellants Access Medical LLC and Robert Clark Wood II:

Jordan P. Schnitzer
The Schnitzer Law Firm
9205 W. Russell Road
Building 3, Suite 240
Las Vegas, Nevada 89148

L. Renee Green
Kravitz Schnitzer & Johnson, Chtd.
Suite 200
8985 S. Eastern Avenue
Las Vegas, Nevada 89123

For Defendant-Appellee/Cross-Appellant Flournoy Management
LLC:

James E. Harper
Harper Selim
1707 Village Center Circle
Suite 140
Las Vegas, Nevada 89134